UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALONZO MAYES,

                    Petitioner,          **REPORT AND RECOMMENDATION**
                                      **No. 03-CV-0417(RJA)(VEB)**

   - vs -

E.R. DONNELLY,

                   Respondent.
_____

## I.      Background

     *Pro se* petitioner Alonzo Mayes ("Mayes" or "petitioner") has filed a petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction, following a guilty

plea, on August 25, 1995, in Erie County Court of New York State Supreme Court, to second

degree murder (N.Y. Penal Law § 125.25(1)) for the homicide of Anthony Turner ("Turner"),

and first degree manslaughter (N.Y. Penal Law § 125.20(1)) for the homicide of Marvin Lloyd,

Jr. ("Lloyd").  The homicides were charged in the same thirteen-count indictment, but arose out

of separate incidents. The guilty plea was offered in satisfaction of that entire indictment and on

the condition that Mayes waive his right to appeal. In addition, two other indictments involving

unrelated criminal charges pending against Mayes were dismissed in their entirety. *See*

Transcript of Plea Hearing ("Plea Tr.") at 2-3.[1] No sentencing commitment was extended to

Mayes as part of the plea deal. With regard to the Turner murder, Mayes pled to the elements of

the crime, but with regard to the manslaughter charge involving Lloyd, Mayes accepted guilt but

elected to rely on the prosecutor's statement of what the proof to be introduced at trial. *See id.* at

---

     [1]       The plea transcript is part of Exhibit D in Respondent's Appendix of Exhibits, submitted in
connection with respondent's Answer to the Petition.

3-4.

Mayes was sentenced on November 5, 1995, to consecutive terms of imprisonment (a determinate term of 21 years with regard to the Turner murder conviction, and an indeterminate term of 4 to 12 years on Lloyd manslaughter conviction).

On direct appeal, the Appellate Division, Fourth Department, unanimously affirmed the conviction in a decision and order entered May 10, 2000, rejecting his claims that the trial court erred in refusing to permit him to withdraw his plea and that the sentence was harsh and excessive. *People v. Mayes*, 27 A.D.2d 929, 708 N.Y.S.2d 662 (App. Div. 4th Dept. 2000).[2]  On August 11, 2000, the New York Court of Appeals denied leave to appeal. *People v. Mayes*, 95 N.Y.2d 868 (N.Y. 2000).

Mayes filed three motions to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10. Two of these were filed before Mayes filed his habeas corpus petition on May 28, 2003,  with this Court. The second C.P.L. § 440.10 motion, filed on December 2001, and denied by the trial court on June 25, 2002, dealt only with the second degree murder conviction involving Turner. That motion presented a *Brady*[3] claim and perjury claim that Mayes has asserted as his first and second grounds for habeas relief in the original habeas petition. As his first ground for habeas relief, Mayes claims that "the prosecution withheld the original statements of Geno Haskins and David Lewis in which both witnesses describe the perpetrator as

---

[2]      "[T]he [trial] [c]ourt did not err in denying defendant's motion to withdraw the guilty plea. The contents of the newspaper article had no effect on the validity of the plea previously entered. Moreover, defendant's assertions in support of the motion establish that defendant, at the time of the plea, was aware of all facts necessary to support a claim of self-defense. Defendant was informed of the maximum possible sentence, and thus his challenge to the severity of the sentence is foreclosed by his waiver of the right to appeal[.]" *People v. Mayes*, 272 A.D.2d at 929 (citations omitted).

[3]      *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution's suppression of requested evidence favorable to the defendant violates due process, notwithstanding the prosecution's good faith).

wearing a white T-shirt during the shooting, and star witness Raymond Anderson testified before the grand jury that petitioner wore a brown-hooded sweatshirt during the shooting. Petition at 7 (Docket #18). Second, Mayes asserts that the prosecution knowingly used false testimony to convict him of second-degree murder by withholding the photographs of the interior of the victim's vehicle. Anderson testified that he observed petitioner in the passenger seat of the vehicle during the incident, but photos of the car, according to Mayes, contradicted Anderson's testimony.

While his habeas petition was pending, Mayes filed another motion with the trial court to vacate his judgment of conviction on June 4, 2008, pursuant to C.P.L. § 440.10(1)(h). This motion sought to attack the manslaughter conviction, and presented alleged *Brady* material obtained through one of petitioner's F.O.I.L. requests granted on April 16, 2008. The trial court denied the motion on the merits on October 10, 2008, and permission to appeal was denied on January 20, 2009.

Mayes then filed a motion to amend his habeas petition and a proposed amended petition attempting to add two claims relating to the first degree manslaughter conviction involving Lloyd's homicide; these claims were exhausted by means of the 2008 C.P.L. § 440.10 motion. For his amended claims, Mayes asserts that the prosecution withheld favorable evidence, namely, the police narrative which consists of various phone calls to 911 allegedly proving that the vehicle used in the Lloyd shooting was recovered about four hours later and was a different car model than Anderson originally identified. Proposed Amended Petition ("Prop. Amend. Pet."), ¶22(C) at 8 (Docket #18). Relatedly, Mayes contends that the prosecutor "knowingly used false testimony" to induce him to plead guilty to first degree manslaughter because

"Anderson stated that Roosevelt Westbrook's gray Pontiac 600 was used in the shooting of Marvin L. Lloyd Jr. [w]hen in fact, the vehicle used in the shooting was recovered by police four hours in damaged condition. (1984 Buick Plate #EKV-338) recovered at 11 Hotaling Drive." Prop. Amend. Pet., ¶22(D) at 8 (Docket #18) (citing Ex. A to Pet'r C.P.L. § 440.10 Motion).

In his Answer to the petition, respondent has asserted the defense of untimeliness. In the alternative, respondent argues that none of Mayes' claims warrant habeas relief. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 3-5, 6-9 (Docket #10). Additionally, respondent has opposed Mayes' motion to amend the petition. *See* Affidavit of Raymond Herman, Esq.

For the reasons that follow, the Court recommends denying Mayes' motion to amend. The Court also recommends finding that Mayes' original petition is timely but that none of the claims raised therein warrant habeas relief. Accordingly, the Court recommends that Mayes' habeas petition be dismissed.

## II.    Discussion

### A.    Timeliness

Whether Mayes' petition is timely depends upon which event counts as the date on which statute of limitations under 28 U.S.C. § 2244(d)(1)–the date on which his judgment of conviction became final, *see* 28 U.S.C. § 2244(d)(1)(A), or the date on which the factual predicate of the claims could have been discovered through the exercise of due diligence, *see id.*, § 2244(d)(1)(D). *See* Respondent's Memorandum of Law ("Resp't Mem.") at 3-5. Mayes did not file his original habeas petition until May 28, 2003, some two and one-half years after his conviction became final on November 9, 2000, for purposes of 28 U.S.C. § 2244(d)(1)(A).

Mayes argued, however, that his petition was timely filed if the start-date set forth in § 2244(d)(1)(D) were utilized, inasmuch as he first received certain allegedly exculpatory evidence on June 19, 2001, pursuant to a Freedom of Information Law ("F.O.I.L.") request. Upon initial screening, the Court (Elfvin, D.J.) found that Mayes' petition would be timely under § 2244(d)(1)(D), if the date of June 19, 2001, were to be used as the statute-of-limitations start-date. The Court accordingly allowed the petition to go forward, and directed respondent to answer. *See* Order dated July 8, 2003 (Elfvin, D.J.) (Docket #5).

Notwithstanding the Court's prior ruling, respondent has renewed his defense of untimeliness, arguing that the date that Mayes' conviction became final should be used as the statute-of-limitations start-date. *See* Resp't Mem. at 3-5. Respondent concedes that if one starts the limitations period on June 19, 2001, the date Mayes received documents pursuant to his F.O.I.L. request, the petition is timely. As Judge Elfvin found, the clock would have been tolled between December 24, 2001, and March 21, 2003, during the pendency of Mayes' second C.P.L. § 440.10 motion in which he sought to exhaust the *Brady* claim based the documents obtained via the June 19, 2001, F.O.I.L. request. *See* 28 U.S.C. § 2244(d)(2); Order at 3 (Docket #5). Using June 19, 2001, as the start-date, and taking into account the statutory tolling occasioned by the second C.P.L. § 440.10 motion, Mayes had 109 days remaining on the limitations period when he filed his original habeas corpus petition. I agree with the analysis of timeliness conducted by Judge Elfvin, *see* Docket #5, and recommend addressing the merits of the claims presented in Mayes' original habeas petition.

**B.      Motion to Amend**

Mayes has now moved to amend his petition to add the claims raised in his 2008 C.P.L. §

440.10 motion. These claims attack the constitutionality of Mayes' first degree manslaughter conviction involving the Lloyd shooting. Respondent argues that amendment of the petition to add these claims should not be permitted because they are untimely and do not "relate back" to the claims in the original petition. *See* Resp't Mem. at 2-4 (Docket #10) (citing *Mayle v. Felix*, 545 U.S. 644 (2005); *Rhines v. Weber*, 544 U.S. 269 (2005); FED. R. CIV. P. 15(c)(1)(B)).

As Mayes recognizes, the issues raised in the 2008 C.P.L. § 440.10 motion relate to the manslaughter charge involving Lloyd. Petitioner's Motion to Amend the Petition ("Pet'r Mot. to Amend.") at 1 (Docket #18). Mayes alleges that "[t]he facts in support of these new claims became known through the exercise of due diligence for the first time on April 16, 2008." *Id.* Mayes states that "[i]n accordance to [sic] 2244(d)(1)(D) the limitations clock began to run again April 16, 2008." *Id.*

Although the Court has found Mayes' original petition timely, the statute of limitations nevertheless has long since expired. As noted above, when Mayes filed his original habeas petition in 2003, he had 109 days left of the one-year limitations period. However, he did not file any other post-conviction collateral motions in state court until five years later, in 2008. After receiving a response to a F.O.I.L. request on April 16, 2008 , Mayes filed another C.P.L. § 440.10 motion, this time challenging the first degree manslaughter conviction. By that time, however, the statute of limitations had expired, and it could not be re-started by the filing of that C.P.L. § 440.10 motion.

Where, as here, a petitioner seeks to add new claims to a habeas petition after respondent has answered the petition, and after the statute of limitations set forth in 28 U.S.C. § 2244(d)(1) has expired, the new claims must "relate back" to the original petition. *See* Fed. R. Civ. P.  Rule

15(c)(2) (providing that pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"); *Mayle v. Felix*, 45 U.S. 644, 656 (2005)). In *Mayle v. Felix*, the Supreme Court rejected a construction of Rule 15 that would define the "conduct, transaction, or occurrence" to mean the same "trial, conviction, or sentence" for purposes of Rule 15(c)(2), *id.* at 657, 664, holding that "relation back" would be in order where "the original and amended petitions state claims that are tied to a common core of operative facts," *id.* at 664 (holding that habeas petitioner's amended petition, filed after the one-year federal habeas limitations period and targeting his statements in a pretrial interrogation, did not arise out of the "conduct, transaction, or occurrence" set forth in his original timely filed petition, and thus did not "relate back" to the date of the original petition, which challenged admission into evidence in his murder trial of videotaped testimony of a witness for the prosecution; the amended petition asserted a new ground for relief supported by facts that differed in both time and type from those the original pleading set forth). The Supreme Court held that "[a]n amended habeas petition . . . does not relate back (and thereby escape [the] one-year time limit [of 28 U.S.C. § 2244(d)(1)]) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

Under the Supreme Court's narrow construction of "conduct, transaction, or occurrence," claims do not necessarily arise out of the same common core of operative facts even when they arise from the same trial, conviction, or sentence. Here, although the claims in the proposed amended petition and original petition stemmed from the same guilty plea, they stem from two

different convictions for two separate crimes. (Indeed, Mayes received consecutive sentences for the two convictions, which is not possible under New York state law if the convictions arose out of the same criminal occurrence.) The proposed amended claims are based upon Mayes' first degree manslaughter conviction for the shooting of Lloyd, while the claims in the original petition were based upon a wholly separate incident, the homicide of Turner. Because the proposed amended claims set forth news ground for relief supported by facts that differ in both time and type from those in the original petition, they do not "relate back" to the original petition. *See Mayle*, 545 U.S. at 650. Because the statute of limitations has expired, and because "relation back" of the proposed new claims is not in order, permission to amend the petition should be denied. *See id.*

### C. Merits of the Claims in the Original Petition

#### 1. Ground One: Violation of *Brady v. Maryland*

Mayes asserts that "[t]he prosecution withheld the original statements of Geno Haskins and David Lewis in which both witnesses describe the perpetrator as wearing a white T-shirt during the shooting, and star witness Raymond Anderson testified before the grand jury that petitioner wore a brown-hooded sweatshirt during the shooting." Petition at 7, ¶22(A) (Docket #1). Mayes asserted this *Brady* claim after one of his F.O.I.L. requests was granted on June 19, 2001, by means of his second motion to vacate filed December 24, 2001, pursuant to C.P.L. § 440.10(1)(h). Mayes offered the following documents received via the F.O.I.L. request: (1) four photographs of what was alleged to be Turner's vehicle, three of which depict an infant car-seat in the front seat; (2) sworn statements of David Lewis and Gino Haskins given to the Buffalo Police Department on July 21, 1994; (3) a "P-73" form from Detective Stanly Suszek to Chief

-8-

Fieramusca; and (4) the second page of a memo from Detectives Harold Frank and Carl Lipinczyk. Mayes contended that all of the foregoing documents were *Brady* material, and submitted an affidavit from his trial counsel purporting to substantiate his allegation that none of the items were disclosed to the defense. *See* Order Denying C.P.L. § 440.10 Motion dated June 25, 2002 ("2002 C.P.L. § 440.10 Order") at 2-3.

The United States Supreme Court has held that it is a violation of the accused's constitutional right to due process for the Government, in good faith or bad in bad faith, to withhold any material, exculpatory evidence whether or not the defendant explicitly requests this evidence. *See Brady*, 373 U.S. at 87. "There are three components to a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

With regard to the statements of Haskins and Lewis saying that the shooter was wearing a white t-shirt, I concur with Mayes that they were favorable to the defense within the meaning of *Brady* since one witness, Anderson, testified at the grand jury that Mayes was wearing a brown hooded sweatshirt on the night of the shooting. Related to these statements is the final item of alleged *Brady* information, the second page of the memo from Det. Suszek. It is *Brady* material to the extent that it indicates a "signed statement was taken froma [sic] possible witness, Gino Demark Haskins Jr."

Mayes argues that the failure of the prosecution to disclose these documents foreclosed his ability to make a knowing and intelligent decision about whether to plead guilty. "The

longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v. Alabama*, 395 U.S. at 242-43; *Parke v. Raley*, 506 U.S. 20, 29 (1992). In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court explained that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. Thus, "a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings." *United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003).

The Supreme Court has held that the Constitution does not require the Government to disclose, pursuant to *Brady*, material *impeachment* information prior to entering into a plea agreement with a criminal defendant. *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (distinguishing between material exculpatory information and material "impeachment information[, which] is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware').") (emphases and alteration in original). The Supreme Court in *Ruiz* reversed the Ninth Circuit, which had in effect held that a guilty plea is not "voluntary" (and that the defendant could not, by pleading guilty, waive her right to a fair trial), unless the prosecutor first made the same disclosure of material impeachment information that they would have been required to make under *Brady* had the defendant proceeded to trial. *Id.*

In denying Mayes' C.P.L. § 440.10 motion, the trial court noted that as a matter of New York state law, it appears that the intermediate appellate courts differ as to whether a defendant who pleads guilty forfeits the right to obtain appellate review of *Brady*. *See* 2002 C.P.L. § 440.10 Order at 4 (citations omitted). The trial court analyzed Mayes' claim by following the decisions from those appellate courts finding that "the failure to disclose 'truly exculpatory evidence' brings into question the voluntariness of a guilty plea, and that *vacatur* should be granted if the withheld evidence materially affected the defendant's decision to plead guilty rather than proceed to trial." 2002 C.P.L. § 440.10 Order at 4 (citations omitted). The trial court found that the "appropriate measure of exculpatory value or materiality in this context is an extension of the [*People v.*] *Vilardi*[, 76 N.Y.2d 67, 73 (N.Y. 1990)] standard." *Id.* at 4.

In *People v. Vilardi*, the New York Court of Appeals held that where a *specific* request for exculpatory material was made, a new trial should be granted if there is a "reasonable possibility" that disclosure would have led to a different result. 76 N.Y.2d at 73. Under the materiality standard enunciated by the Supreme Court and applied to *Brady* claims, undisclosed evidence is considered to be "material only if there is a reasonable *probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (emphasis supplied) (holding that prosecution's failure to disclose evidence, which, if admitted, would have had a reasonable probability of resulting in a different verdict, is grounds for granting a petition under 28 U.S.C. § 2255); *accord*, *e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995). The Supreme Court has explained that a "'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines the confidence in the outcome of the trial.'"

*Kyles v. Whitley*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. at 678). Thus, a defendant successfully establishes a *Brady* violation by "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435 (footnote omitted).

Under the *Vilardi* standard, the New York courts apply a more defendant-favorable standard when the defense has made a specific discovery request to the prosecution; the federal standard set forth in *Bagley*, by contrast, does not set forth a special standard when there has been specific request by the defense for certain *Brady* material.[4] *Vilardi* states that "where the prosecutor was made aware by a specific discovery request that defendant considered the material important to the defense," a defendant need only show a "'reasonable *possibility*' that the failure to disclose the exculpatory [information] contributed to the verdict . . ." *People v. Vilardi*, 76 N.Y.2d at 77 (emphasis supplied). Regardless of whether there has been a specific defense request for certain *Brady* information, *Bagley* requires a defendant to show a "reasonable *probability*" of a different result, had the suppressed material been disclosed, *see Kyles*, 514 U.S. at 434 (citation omitted; emphasis supplied).

Mayes argues that because the statements of Haskins and Lewis were not disclosed "he could not have made an informed decision to plead guilty to the murder of Turner." 2002 C.P.L. § 440.10 Order at 3. As the state court noted, the statements of Lewis and Haskins did create a discrepancy in the descriptions of the perpetrator's clothing; Lewis and Haskins stated that the shooter was wearing a white t-shirt and shorts or blue jeans, while Anderson testified at the

---

[4]     *Accord Berger v. Stinson*, 97 F. Supp.2d at 368 (citing People v. Washington, 180 Misc.2d 838, 842, 694 N.Y.S.2d 296 (N.Y.Sup. Ct.1999) ("Vilardi  represented a decision by the New York Court of Appeals to depart from the Federal standard of 'reasonable probability' to afford State defendants the increased protection of the 'reasonable possibility' test in situations where Brady material was specifically requested[.]").

grand jury that petitioner was wearing a brown hooded sweatshirt at the time of the shooting. C.P.L. § 440.10 Order at 3, 4. To the extent that this evidence constitutes favorable impeachment evidence, the prosecution did not run afoul of *Brady* by failing to disclose it prior to petitioner entering his guilty plea. *See United States v. Ruiz*, 536 U.S. at 626.

To the extent that the statements of Lewis and Haskins can be considered exculpatory, I agree with the state court that the prosecution's failure to disclose these documents did not result in a violation of due process under *Brady*. This is because the documents, had they been disclosed, would not have materially affected petitioner's decision to plead guilty to shooting Turner, rather than proceed to trial. *See* 2002 C.P.L. § 440.10 Order at 4. In other words, I agree with the state court that there is "no reasonable possibility that [petitioner] would have rejected the plea had he been privy to documents alleged to have been withheld." 2002 C.P.L. § 440.10 Order 5. As the trial court found, there was ample evidence establishing that Mayes shot and killed Turner: "three witnesses identified the defendant as the perpetrator, and . . . following a *Wade* hearing, the court ruled that Lewis and Haskins would be permitted to identify the defendant at trial." 2002 C.P.L. § 440.10 Order at 4. The state court also found it significant that Mayes' "admissions [regarding the Turner homicide] made to an [sic] jail-house informant were ruled admissible following a *Cardona*[5] hearing . . . ." *Id.* Finally, the state court took into account that Mayes, "during the plea colloquy, unequivocally admitted to shooting Turner" and when he moved to set aside the verdict, he "did not deny that he was the shooter, but suggested his act

---

[5] A *Cardona* hearing, *see People v. Cardona*, 41 N.Y.2d 333, 335 (N.Y. 1977), is held to determine whether an inmate informant who testifies that a confession was made by a defendant while in jail was an agent of the government; where the informer "works independently of the prosecution, provides information on his own initiative, and the government's role is limited to the passive receipt of such information, the informer is not, as a matter of law" an agent of the government. *See also Massiah v. United States*, 377 U.S. 201, 203-04 (1964).

was justified because Turner was armed." *Id.*

Given the compelling evidence of Mayes' culpability with regard to the shooting of Turner, I cannot credit Mayes' contention that the withheld *Brady* "information was 'material' and disclosure of th[at] information in a timely manner would have resulted in the defendant proceeding to trial, in stead of pleading guilty to murder in the Second Degree, which the defendant had informed the court on September 29, 1995[,] that he was not guilty of." Pet'r C.P.L. § 440.10 Motion at 5. Beyond his after-the-fact, conclusory assertions, Mayes has come forward with nothing that gives rise to even a possibility that he would have instead chosen to face trial on the Turner murder if the items of *Brady* information allegedly had not been withheld from him prior to the entry of his guilty plea. *See Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) (stating that the "prejudice" prong of the inquiry required under *Hill v. Lockhart*, 474 U.S. at 56-59, "is not satisfied merely by [petitioner's] testimony that he would have gone to trial" and not pleaded guilty "since a defendant's testimony after the fact 'suffers from obvious credibility problems'") (quoting *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir.), *cert. denied*, 488 U.S. 843 (1988)). At the plea hearing, Mayes acknowledged "that if he went to trial trial [he] would be exposed to more serious and severe punishment on the murder count and it is for those reasons that we [sic] are entering into the disposition on the Marvin Lloyd homicide." Plea Tr. at 4. When the trial court asked him if "[a]nybody [was] forcing him to" plead guilty, Mayes responded, "No. I feel that because I was wrong that's the best thing to do." Plea Tr. at 17. Mayes then entered a plea of guilty to second degree murder and first degree manslaughter. *Id.* The trial was entitled to rely upon the defendant's sworn statements, made in open court, that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he

could not withdraw the plea, understood that he was waiving his right to appeal, had been made no promises except those contained in the plea agreement, and was pleading guilty of his own accord. *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (citing, *inter alia*, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.")).

Mayes has failed to demonstrate that any of the alleged *Brady* information was "material" to his decision to plead guilty in this case. Moreover, to the extent that some of the *Brady* information was impeaching rather than exculpatory, the Constitution did not require its disclosure prior to Mayes' guilty plea. For the foregoing reasons, I recommend dismissal of Ground One of the Petition asserting that Mayes' due process rights under *Brady v. Maryland* were violated.

**2.    Ground Two: Knowing use of perjured testimony by the prosecutor**

According to Mayes, "[t]he prosecution knowingly used false testimony (count 8 murder in the 2nd degree)" because it "withheld photos of the interior of the victim's vehicle. Raymond Anderson placed petitioner in the passenger seat of the vehicle during the incident. The photos contradict his testimony. It is also noteworthy that Haskins and Lewis never placed the perpatrator [sic] in the victim's vehicle." Petition at 8, ¶22(B).

With regard to the photographs of Turner's vehicle, Mayes asserted that these constituted *Brady* material in connection with his C.P.L. § 440.10 motion. The trial court agreed that they

could be considered favorable to the defense since prosecution witness Richard Anderson ("Anderson") testified at the grand jury that immediately prior to Turner being shot, he observed petitioner in the front passenger-seat of Turner's car. 2002 C.P.L. § 440.10 Order at 3. Petitioner claimed the photographs were material because the placement of the infant car-seat, "as depicted in the photographs, rendered it unlikely or impossible for him to have occupied the front passenger seat." *Id.* Related to the photographs is an item of police correspondence that Mayes contended is *Brady* material; it refers to a "bay [sic] seat" being found in the front passenger's seat of Turner's car.[6]

Mayes is claiming that the photographs refute Anderson's grand jury testimony that he observed Mayes in the front seat of Turner's car prior to the shooting. To the extent that Mayes is attempting to assert a claim that Anderson perjured himself when he testified before the grand jury, habeas relief is not warranted because the claim is not cognizable in this federal habeas proceeding and, in any event, the claim is without merit.

In *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989), the Second Circuit considered whether claims of error in a state grand jury proceeding, including insufficiency of evidence and the prosecutor's failure to present exculpatory evidence, are cognizable in a habeas corpus proceeding. The *Lopez* court held that such challenges to a state grand jury proceeding do not state a basis for habeas relief, relying upon the Supreme Court's holding of *United States v. Mechanik*, 475 U.S. 66 (1986). *Mechanik* dealt with a constitutional attack upon a federal grand jury proceeding. The Supreme Court held in *Mechanik* that

> [T]he petit jury's subsequent guilty verdict means not only that there was

---

[6]        Given the existence of the photographs showing an infant car-seat in Turner's vehicle, the reference to "bay" presumably is a typographical error and should read "baby."

-16-

probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

475 U.S. at 70 (footnote omitted). District courts in this circuit have held that *Lopez*'s and *Mechanik*'s "reasoning applies equally to a conviction achieved by a plea of guilty." *Alston v. Ricks*, No. 01 Civ. 9862(GWG), 2003 WL 42144, at *7 (S.D.N.Y. Jan. 7, 2003) (citing, *inter alia*, *Lloyd v. Walker*, 771 F. Supp. 570, 576-77 (E.D.N.Y.1991) ("Having admitted to the factual basis of the charges against him upon entering a plea of guilty, any error in the proceeding which led to his indictment is . . . rendered harmless, and is not a cognizable claim in a federal habeas proceeding.") (internal citation omitted); *Ballard v. Costello*, No. 01-CV-1000, 2001 WL 1388297, at *2 (E.D.N.Y. Nov. 2, 2001) (holding that "[petitioner's] guilty pleas cured any possible deficiencies in the grand jury proceeding") (citations omitted)); *see also Hutchings v. Herbert*, 260 F. Supp.2d 571, 577 (W.D.N.Y. 2003) (Larimer, D.J.) Petitioner's guilty plea cured any possible deficiency in the grand jury proceeding caused by his failure to testify there); *Jordan v. Dufrain*, No. 98 Civ. 4166(MBM), 2003 WL 1740439, at *3 (S.D.N.Y. Apr.2, 2003) (concluding that the petitioner had "admitted his guilt when he entered his guilty plea, and thus any errors in the grand jury proceedings were rendered harmless")

Furthermore, Mayes has not established that any prosecution witness committed perjury. *See United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001) (in the context of a motion for a new trial based upon newly discovered evidence of trial perjury, the defendant "In order to grant a new trial based on newly discovered evidence of trial perjury, the appellants must first demonstrate that the witness in fact committed perjury") (citing *United States v. Torres*, 128

F.3d 38, 49 (2d Cir.1997)). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *Id.* (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *Id.* (citing *United States v. Sanchez*, 969 F.2d 1409, 1414-15 (2d Cir. 1992)); *see also Mason v. Phillips*, 548 F. Supp. 674, 675 (S.D.N.Y. 1982) (finding that petitioner failed to establish perjury was committed where "the trial record simply establishes that a police officer's trial testimony was inconsistent with a previous unsworn statement, which discrepancy merely raised an issue of credibility"). Whether "the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury." *Id.* (quoting *United States v. Wallach*, 935 F.2d 445, 457 (2d Cir. 1991)). If the prosecution was unaware of the perjury at the time of trial, the defendant must "show that the jury probably would have acquitted in the absence of the false testimony" to prevail on his motion for a new trial. *Torres*, 128 F.3d at 49. If the prosecution knew or should have known of the perjury, a new trial is warranted "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (internal quotation marks and citation omitted).

The most Mayes has created here is a credibility issue between the witnesses which properly would be resolved by the finder of fact; he has not come close to establishing that Anderson wilfully provided false and material testimony. Even if he could demonstrate that Anderson perjured himself in the grand jury, which I expressly do not find to be the case, Mayes cannot demonstrate that it affected his decision about whether to plead guilty to the Turner

murder. As respondent argued and the trial court found, the issue of whether there was a baby carseat in the front seat of the car was not material for, it "it cannot be said that this information refuted Raymond Anderson's [grand jury] testimony." People's Opposition Affidavit dated June 6, 2002 at 5 ("Anderson never testified that the defendant sat in the passenger seat. Morever, . . . the photographs reveal[ ] that petitioner could have sat in the passenger seat with the ba[b]y seat, which was tipped on its side. In addition, the ba[b]y seat could have been moved without any difficulty."); 2002 C.P.L. § 440.10 Order at 4 ("[D]espite the position of the infant seat, an individual, especially one attempting to remove the car radio, could have managed to occupy the front passenger seat of Turner's vehicle."). Furthermore, the prosecution had a substantial case against Mayes, as discussed above in this Report and Recommendation. *See Wong*, 78 F.3d at 82 (However, even if the prosecution knew of the perjury, "the subsequent discovery that a witness's testimony at trial was perjured will not warrant a new trial" if "independent evidence supports a defendant's conviction[.]") (citing *United States v. Reyes*, 49 F.3d 63, 68 (2d Cir.1995)). Accordingly, I recommend that Mayes' claims of perjury be dismissed.

### III.     Conclusion

For the reasons set forth above, the Court recommends that petitioner's motion to amend be **denied** and that petitioner's original petition for a writ of habeas corpus be **denied**. Furthermore, the Court finds that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, the Court recommends that no certificate of appealability should issue with respect to

any of petitioner's claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: June 30, 2009
      Buffalo, New York.

# ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to

petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: June 30, 2009
       Buffalo, New York